1. JUDGMENT—RES JUDICATA.
    In a proceeding to sell decedent's real estate to pay debts, a judgment against an executor as such, on a claim against a decedent, is not res judicata as to a purchaser of the real estate within three years of decedent's death.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1211.]

2. EXECUTORS—SALE OF DECEDENT'S REALTY.
    An application to sell decedent's real estate to pay debts was contested by a purchaser of such real estate at a sale within three years from decedent's death. The personal estate was sufficient to pay all the debts except two, and one of them was a judgment fraudulently obtained against decedent's estate, and the other was not an obligation of decedent at the time of her death. *Held*, that the application will be denied.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 1337.].

In the matter of the estate of M. Lauraine Catlin. Application for sale of decedent's real estate. Application denied.

Salisbury & Phillips, for petitioner.
Lewis & McKay, for contestant.

CHURCH, S. This is an application for the sale of decedent's real estate. It is conceded that if two of the debts which are contested by the owner of the real estate, who purchased the same within the period of three years after the death of decedent, are not valid debts against the estate of the deceased, then, as the personal property is more than sufficient to pay the various debts, this proceeding cannot be maintained.

The petitioner, at the outset of this hearing, contends that, as he established the claims and succeeded in recovering a judgment against the executor of the decedent's estate for such claims, the judgment prevents the contestant from questioning their validity. These judgments are certainly not res adjudicata as against the contestant, as the contestant is not a privy in any way to such proceedings; and, in addition, it is apparent from an inspection of section 2755 of the Code that it was intended to permit a person owning the property sought to be sold to contest the validity of any debt claimed to be owing by the deceased in this proceeding. If there was merely reported to me the testimony which had been taken in the two proceedings to recover these judgments, I should naturally have been inclined to have acquiesced in such

judgments; but the evidence taken in this proceeding, and now submitted as to character of such claims, shows that they are of so grotesque a character that I cannot acquiesce in any such view of the law or the facts as impelled the court to render the judgments.

As to what is known as the $1,000 claim upon the Carrothers note, the facts are briefly as follows: There was held by the petitioner and the deceased, as trustees for the benefit of the deceased as life tenant and the petitioner as remainderman, this property which is known as the "Carrothers note." The petitioner was an officer in an insurance company in this city, against which a judgment had been obtained. For the purpose of enabling the company to appeal and stay the execution of a judgment against it an undertaking was made, which was signed by the deceased. This case had been finally affirmed by the Court of Appeals, and it became necessary to pay the judgment thereon. The insurance company was practically insolvent, and it is apparent that the petitioner was making efforts to raise the money in different directions to pay this judgment, and thus save his sister from the necessity of meeting the heavy obligation which she would incur from having signed this undertaking. Being unsuccessful in raising the money in any other way, the petitioner and the deceased raised it on this Carrothers note, which was given to the petitioner, and with which he paid the judgment in question, thus relieving his sister, the deceased, from any further liability under her undertaking. It is now the claim of the petitioner that this action by her in disposing of the trust fund deprived him of his right to the same as a remainderman, and that, therefore, he is entitled to the judgment he has obtained against her estate. This is not only unconscionable, but is little short of actual villainy. Without reviewing the evidence in detail it is perfectly apparent that the deceased, when she went upon this undertaking, did so at his solicitation, and under the moral obligation, if not the legal obligation, that she would be saved harmless therefrom; and, when the money was raised on this Carrothers note, in which he was the remainderman, he acquiesced in its use for this purpose, and the only person who really had cause for complaint was the deceased, because the trust fund which was created for her benefit was invaded to this extent. Therefore, this does not constitute a debt of the deceased which can be made the basis of this proceeding.

The other debt which petitioner attempts to assert against the decedent's estate is based upon even a more remarkable state of affairs. It appears that he was the owner of a bond and mortgage upon property owned by the deceased, of which she had assumed the payment; that subsequent to the death of the deceased, in pursuance of some negotiations between the petitioner and the executor, he executed a satisfaction piece of the mortgage, which was placed on file, and the mortgage satisfied of record. The executor thereupon executed a mortgage upon this property, and secured the cash therefor. The petitioner claims that such satisfaction piece was delivered upon some expressed or implied agreement made between him and the executor by which he was to receive a proportion of the moneys to be realized from this new mortgage, and that, the executor not complying with his promise, and he not hav-

ing been paid in cash therefrom the amount of this mortgage which he was thus induced to satisfy, is still owing to him; and he has brought suit against this estate upon the debt as expressed in the original bond, and the courts appear to have sustained his claim and allowed this debt, extraordinary as it may seem.

In considering this question, we should notice at the outset that it is provided that, among the claims which may be made the basis for this proceeding, that of a creditor by mortgage, which is a lien upon decedent's estate, is expressly excluded. Therefore, at the time of the death of the deceased, this debt could not have been made the basis for this proceeding, or, if the proceeding was instituted by some other person, could not have been included as among the debts to be paid by the moneys realized on the same. This would seem to be a sufficient answer to this matter, but there is more. It is plain that any claim made upon a debt due upon the bond in this case must have as its basis the breach by the executor of the contract which the petitioner alleges was made with him. In other words, the basis of the debt is not the obligation left by the deceased at her death, but such as follows the agreement with the executor and its breach.

It also appears that the petitioner is estopped as against the contestant from pursuing this claim. He signed the satisfaction piece which he placed on record in which he stated under seal that the mortgage was paid. Of course, if the mortgage was paid the bond was paid, or at least that would be the logical and legitimate assumption which any person inspecting this satisfaction piece would be entitled to make; and, having thus created an estoppel of record by admitting that this bond and mortgage was paid, he is estopped from asserting against the person who purchased from a devisee in good faith that such mortgage has not been paid, and that he is entitled to recover the full amount due upon the bond.

This proceeding is a technical and statutory one. A person seeking its benefits must clearly and properly see to the correctness of every step taken under the provisions of the law in order to affect the rights of persons honestly purchasing real estate of a decedent within the period in which the proceeding may be instituted. There is no rule of liberal construction as against innocent third parties which should lead the court to strain after a result which will sustain the validity of the proceeding.

Several objections are made by the contestant as to technical defects in the parties and character of the proceeding. Some of these, in my judgment, are not well founded, but it seems to me that the objection founded upon the fact that Phillips, the person who made the new loan after the satisfaction of the mortgage in question, is a necessary party is sustained by the Code, and this proceeding should fall in consequence of the failure of the petitioner to make him a party. But as in the examination of the question I have reached the conclusion that upon its merits the application should be denied, I prefer to state that fact in this opinion. Let decree be entered accordingly.

Decreed accordingly.